UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
        :
THE NEW YORK AND PRESBYTERIAN  :
HOSPITAL,                                     :
        :
        :  Case No. 24-CV-09865 (RA)
        Petitioner,  :
        :
- against -        :
        :
NEW YORK STATE NURSES ASSOCIATION,  :
        :
        Respondent.  :
        :
-------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## RESPONDENT'S MOTION TO CONFIRM AN ARBITRATION AWARD

Olivia R. Singer
Megan Stater Shaw
COHEN, WEISS and SIMON LLP
909 Third Avenue, 12th Floor
New York, NY 10022
(212) 356-0206
osinger@cwsny.com

*Counsel for Respondent*
*New York State Nurses Association*

# **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

I.      The Award Does Not Violate Public Policy. ...................................................................... 1

          A.      An Arbitrator's Intent is Critical to Determining Whether an Award is Unequivocally Punitive ................................................................................ 2

          B.      The Hospital Has Failed to Show that the Award is Clearly and Unequivocally Punitive ................................................................................ 4

          C.      The Cases Cited by NYSNA Demonstrate that the Award Should be Confirmed .................................................................................................. 7

II.     Arbitrator Taylor Did Not Exceed His Authority ............................................................... 9

III.    The Award Is Not Irrational ............................................................................................. 10

CONCLUSION ............................................................................................................................ 12

WORD COUNT CERTIFICATION ............................................................................................ 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amalgamated Transit Union Loc. No. 1498 v. Jefferson Partners*,
   229 F.3d 1198 (8th Cir. 2000) ..................................................................................5, 7

*Bd. of Educ. of Cent. Sch. Dist. No. 1 v. Niagara-Wheatfield Tchrs. Ass'n*,
   389 N.E.2d 104 (N.Y. 1979)......................................................................................2, 4

*Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council*,
   729 F. App'x 33 (2d Cir. 2018) ....................................................................................11

*Constr. Council 175 v. N.Y. Paving Inc.*,
   708 F. Supp. 3d 221 (E.D.N.Y. 2023) ............................................................................8

*Desert Palace v. Loc. Joint Exec. Bd. of Las Vegas*,
   679 F.2d 789 (9th Cir. 1982) .........................................................................................6

*Elec., Radio, and Mach. Workers, Loc. 1139 v. Litton Microwave Cooking Prods.,*
   *Litton Sys., Inc.*,
   728 F.2d 970 (8th Cir.1984) (en banc) ..........................................................................6

*Garrity v. Lyle Stuart, Inc.*,
   353 N.E.2d 793 (N.Y. 1976)..........................................................................................2

*Harper Ins. Ltd. v. Century Indem. Co.*,
   819 F. Supp. 2d 270 (S.D.N.Y. 2011).........................................................................11

*Hygrade Operators, Inc. v. Loc. 333, United Marine Div. ILA*,
   945 F.2d 18 (2d Cir. 1991)........................................................................................6, 7

*Leed Architectural Prods. Inc. v. United Steelworkers, Loc. 6674*,
   916 F.2d 63 (2d Cir. 1990)............................................................................................9

*Mogge v. Dist. 8 Int'l Ass'n of Machinists*,
   454 F.2d 510 (7th Cir. 1971) .........................................................................................7

*Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*,
   820 F.3d 527 (2d Cir. 2016).................................................................................4, 8, 10

*ReliaStar Life Ins. v. EMC Nat'l Life Co.*,
   564 F.3d 81 (2d Cir. 2009)............................................................................................8

*The N.Y. & Presbyterian Hosp. v. N.Y. State Nurses Ass'n ("NYPH I")*,
   No. 1:24-CV-05648 (JLR), 2024 WL 5107586 (S.D.N.Y. Dec. 13, 2024),
   appeal pending, No. 25-113 (docketed January 16, 2025) ...............................3, 6, 10

*Matter of U.S. Offshore, Inc. (Seabulk Offshore, Ltd.)*,
  753 F. Supp. 86 (S.D.N.Y. 1990) ...........................................................................................3

*United Steelworkers v. Enter. Wheel & Car Corp.*,
  363 U.S. 593 (1960)............................................................................................................7, 10

*Westinghouse Elec. Corp. v. IBEW Loc. 1805*,
  561 F.2d 521 (4th Cir. 1977) ........................................................................................4, 5, 6

**PRELIMINARY STATEMENT**

NYSNA respectfully submits this reply memorandum of law in support of its motion to confirm the Award issued by Arbitrator Timothy S. Taylor.

In its opening memorandum, NYSNA explained that its cross-motion to confirm the Award should be granted because the Hospital's motion to vacate lacked merit. Dkt. No. 15 ("Resp. Br.") at 24-25. The Hospital opposes NYSNA's cross-motion for the same reasons it seeks vacatur. Dkt. No. 20 ("Pet. Opp. Br.") at 1-2. Thus, it claims that Arbitrator Taylor violated a public policy against punitive damages, exceeded his authority under the parties' collective bargaining agreement ("CBA"), and acted irrationally. These arguments fail now for the same reasons they failed before: they ignore binding precedent and impermissibly seek a *de novo* review of Taylor's thorough, well-reasoned decision. The Award should be confirmed.

**ARGUMENT**

**I.      The Award Does Not Violate Public Policy.**

The Hospital failed to show that the Award unequivocally violates a public policy against punitive damages. Resp. Br. at 10-19. Taylor emphasized his intent to issue a compensatory, not punitive, remedy, and the Award itself bears all the trappings of make-whole relief: damages carefully tailored to compensate for the adverse working conditions caused by the Hospital's staffing violations. *Id.* at 12-13.

The Hospital argues that: (1) Taylor's intent is not dispositive, or even strong evidence; (2) the Award's circumstances show its punitive nature; and (3) the cases cited by NYSNA are inapposite. None of these arguments has merit.

1

### A. An Arbitrator's Intent is Critical to Determining Whether an Award is Unequivocally Punitive.

The Hospital errs in seeking to minimize Taylor's unambiguous intent to issue compensatory relief. In its opening brief, the Hospital asserted that "[f]ederal labor law and New York state law" establish that the Award violated a public policy against punitive damages. Dkt. No. 8 ("Pet. Br.") at 14. The New York Court of Appeals, however, has narrowly interpreted this public policy, holding that an award need not be "arrived at by precise mathematical computations" and should be vacated "[o]nly where the damages are *genuinely intended* to be punitive." *Bd. of Educ. of Cent. Sch. Dist. No. 1 v. Niagara-Wheatfield Tchrs. Ass'n*, 389 N.E.2d 104, 104 (N.Y. 1979) (emphasis added).

The Hospital ignored *Niagara-Wheatfield* in its opening brief and relied instead on an earlier Court of Appeals case, *Garrity v. Lyle Stuart, Inc.*, 353 N.E.2d 793 (N.Y. 1976). Notably, *Niagara-Wheatfield* directly addressed and narrowly construed *Garrity*. And although NYSNA explained *Niagara-Wheatfield*'s significance in its cross-motion, the Hospital again ignores the decision's holding in its opposition papers. *See* Pet. Opp. Br. at 3-4, 7.

In any event, federal courts do emphasize the arbitrator's intent in evaluating whether an award is punitive. In *John T. Brady & Co. v. Form-Eze Sys., Inc.*, the Second Circuit concluded that an arbitration award was compensatory because the arbitrator "did not characterize the award as punitive" and because there was "no basis to infer that the amount assessed . . . bore no relationship to the actual damage suffered." 623 F.2d 261, 264 (2d Cir. 1980) (applying *Niagara-Wheatfield*, 389 N.E.2d at 104). The Hospital attempts to distinguish *John T. Brady* by focusing on the fact that this case involved in part the arbitrator's application of a liquidated damages provision. Pet. Opp. Br. at 7. But this fact does nothing to lessen the substantial weight the court placed on the arbitrator's intent in crafting his remedy. In

2

confirming the award, the Second Circuit explained: "there is no indication that the arbitrator *intended* the award to be punitive, and we are bound by the interpretation given to the instrument by the arbitrator so long as it is 'barely colorable.'" *Id.* at 264 (emphasis added); *see also Matter of U.S. Offshore, Inc. (Seabulk Offshore, Ltd.)*, 753 F. Supp. 86, 92 (S.D.N.Y. 1990) ("the arbitrators did not say that the difference in rate was intended to be punitive, and that ends the inquiry into that subject"); *The N.Y. & Presbyterian Hosp. v. N.Y. State Nurses Ass'n ("NYPH I")*, No. 1:24-CV-05648 (JLR), 2024 WL 5107586, at *5 (S.D.N.Y. Dec. 13, 2024), *appeal docketed*, No. 25-113 (2d Cir. Jan. 16, 2025) (the arbitrator "expressly address[ed] the question whether awarding monetary would be punitive" and "made specific findings about the nurses' injuries due to the understaffing and tailored the monetary remedy to compensate for that harm").

The Hospital seeks but is unable to distinguish *John T. Brady* and *Matter of U.S. Offshore* because they arise under the Federal Arbitration Act ("FAA"). As NYSNA explained in its opening brief, the Second Circuit has stated that cases arising under Section 301 of the Labor Management Relations Act should draw from the FAA for guidance, and that the standard of review under both statutes is "materially the same." Resp. Br. at 23 (citing cases). The Hospital provides no basis to believe that the Second Circuit's approach to punitive damages under the FAA is materially distinct or would lead to "bizarre results" in the labor context. Pet. Opp. Br. at 5.

In sum, both federal and New York state courts have recognized that where an arbitrator intends to issue a compensatory award, that intent is controlling so long as there is any basis to infer that the award bears at least some relationship to the claimant's harm.

3

### B. The Hospital Has Failed to Show that the Award is Clearly and Unequivocally Punitive.

The Award must be confirmed unless the Hospital can show that the remedy is unequivocally punitive. It has failed to meet this heavy burden.

*First*, as detailed in the preceding section, Taylor genuinely intended to issue compensatory, not punitive, relief. *See* Award at 54 ("[c]ompensating a nurse for excessive workload is not a penalty or punitive award giving nurses additional pay"); *see* Resp. Br. at 11-12 (collecting cases). That finding is dispositive under New York law, *Niagara-Wheatfield Tchrs. Ass'n*, 389 N.E.2d at 104, which the Hospital claims is relevant here.

*Second*, there is no basis under federal law to infer that the Award is unequivocally punitive. As NYSNA explained in its opening brief, because Taylor intended to issue a compensatory remedy, and because that remedy bears (at minimum) at least some relation to the actual harm suffered by the nurses, the Award is not punitive under *John T. Brady* and its progeny. Resp. Br. at 12-14. The Hospital recasts the same arguments it made in its opening brief that the Award bears "hallmarks" of punitive damages. This argument once again fails because it misconstrues the Award and asks too much of the Court's extremely limited review. Resp. Br. at 16-19.

The Hospital argues, for example, that the Award "does not correspond to any losses allegedly suffered." Pet. Opp. Br. at 8. This is incorrect. As NYSNA explained in its opening brief, Arbitrator Taylor made specific findings regarding "a pattern of staffing violations on the Allen ED, which negatively impacted the nurses assigned to that unit by creating increased workloads" and tailored a remedy to compensate the nurses for "increased RN workloads that require a remedy." Award at 55-56; Resp. Br. at 3, 10, 12, 14. Arbitrator Taylor's findings as to the harm experienced by Allen ED nurses are dispositive. *Nat'l Football*

4

*League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016).

The Hospital next contends, citing *Westinghouse Electric Corporation v. IBEW Local 1805*, 561 F.2d 521 (4th Cir. 1977), a Fourth Circuit case, that compensatory damages are not available where the breach of the CBA did not result in economic injury. The Hospital once again misconstrues the holding of *Westinghouse*. In *Westinghouse*, the Fourth Circuit did not foreclose the availability of compensatory relief in all instances involving non-economic injury. Instead, the court simply stated that: "*With respect to vacation shutdowns*, compensatory damages may be awarded only when a breach of the bargaining agreement causes a monetary loss." 561 F.2d at 523 (emphasis added). Citing other arbitration decisions involving vacation shutdowns, the court found that there was no evidence of a compensable injury to employees resulting from the company's failure to afford the *union* sufficient time for negotiations concerning the timing of the shutdown (the only contractual breach found by the arbitrator). *Id.* In so finding, the court addressed two categories of employees: 1) employees who had taken their vacation during the shutdown, and 2) employees who had taken their vacation prior to the shutdown and therefore were required to take unpaid time during the shutdown. *Id.* at 523-524. The court first noted that the employees who took their vacation during the shutdown had suffered no monetary loss because they had received their full vacation entitlement. *Id.* at 523. Turning to the employees who took their vacation before the shutdown, the court noted that the union had not introduced proof that the delay in negotiating had "influenced any employee's scheduling of his vacation" and that employees had had a full 12 months' notice of the timing of the vacation shutdown. Even if the company had afforded the union sufficient time for

5

negotiations, the court found no evidence that the shutdown would have "suited the convenience of every employee." *Id.* at 524.

If anything can be gleaned from *Westinghouse*, it is that a remedy is compensable where (1) evidence exists that the employee suffered "monetary loss, inconvenience, or hardship," *id.* at 524, (2) there is a "causal relationship between the company's violation of the agreement and the loss claimed by the employee," *id.* at 523-524, and (3) the chosen remedy seeks to make the employee whole for this "compensable damage," *id.* at 523.[1]

As NYSNA explained in its opening brief, courts and arbitrators have repeatedly recognized the propriety of compensatory relief for non-pecuniary harms including excessive workload. Resp. Br. at 10, 15-16. An award is not punitive simply because it seeks to remedy a noneconomic injury. *See, e.g.*, *NYPH I*, 2024 WL 5107586, at *6 (finding the arbitrator "did not exceed her authority by imposing a monetary award" to remedy staffing violations that resulted in excessive workload); *see also Elec., Radio, and Mach. Workers, Loc. 1139 v. Litton Microwave Cooking Prods., Litton Sys., Inc.*, 728 F.2d 970 (8th Cir.1984) (en banc) (affirming award of second paid vacation to employees who had been required to take vacations during a plant shutdown in violation of the CBA). And an award is not punitive simply because "no precise quantification of damages [i]s possible." *Hygrade Operators, Inc. v. Loc. 333, United Marine Div. ILA*, 945 F.2d 18, 24–25 (2d Cir. 1991) (deferring to arbitrator's discretion to "approximate" damages "as the circumstances allowed").

---

[1] *Desert Palace v. Local Joint Executive Board of Las Vegas*, 679 F.2d 789, 794 (9th Cir. 1982) likewise does not foreclose the availability of compensatory damages for non-pecuniary harm. Understood in context, the Ninth Circuit, citing *Westinghouse*, simply recognized that where an award seeks to remedy an economic loss (e.g., unpaid tips), the chosen remedy should not exceed the monetary loss suffered.

6

Finally, the Hospital repeats its claim that the Award provides a windfall for nurses. *See* Resp. Br. at 17 (detailing why this argument fails). As NYSNA explained, this is a difficult argument to make when, overall, the Hospital is paying less in total compensation for nurses than what it agreed to pay when it signed the CBA. *See* Resp. Br. at 18.

### C. The Cases Cited by NYSNA Demonstrate that the Award Should Be Confirmed.

The Hospital's attempt to distinguish the cases cited by NYSNA falls short. First, the Hospital incorrectly states that NYSNA relies exclusively on cases interpreting CBAs that "expressly provide[ ] for a *monetary remedy* for violation of staffing grid numbers." Pet. Opp. Br. at 10 (emphasis in original). In fact, none of the three arbitration awards that NYSNA attached as exhibits to Declaration of Olivia R. Singer, Dkt. No. 16, concerned a CBA with a specific monetary remedy provision for staffing violations.

Second, the Hospital claims that its agreement to a broad remedial provision for staffing violations ("the same remedial authority as an arbitrator under the Agreement") somehow places it in a better position than parties who may have agreed to a specified monetary remedy for staffing violations. As NYSNA explained in its opening brief, the opposite is true. Resp. Br. at 21. Arbitrators have broad authority to determine an appropriate remedy—especially where no specific remedy is prescribed in the CBA. *See Mogge v. Dist. 8 Int'l Ass'n of Machinists*, 454 F.2d 510, 514 (7th Cir. 1971) ("where the contract is not explicit concerning the proper remedy, the arbitrator is given wide latitude in fashioning an appropriate remedy") (citing *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960)); *Amalgamated Transit Union Loc. No. 1498 v. Jefferson Partners*, 229 F.3d 1198, 1201 (8th Cir. 2000) (finding arbitrator did not exceed authority by fashioning remedy not "expressly provided for in the agreement" because "contracts often lack explicit provisions for specific kinds of remedies").

7

By agreeing to a broad general remedial provision, the Hospital assented to Taylor's discretion to craft the remedy he deemed appropriate given the circumstances. *See Hygrade Operators*, 945 F.2d at 23-24 (courts must "defer to the 'honest judgment' of an authorized arbitrator's determination of a remedy").

Similarly, in *Construction Council 175 v. N.Y. Paving Inc.*, 708 F. Supp. 3d 221 (E.D.N.Y. 2023), the court confirmed the arbitrator's award of compensatory damages for the employer's staffing violation based on its failure to maintain a minimum crew size. The arbitrator relied on union steward reports of crew hours in an effort to approximate the harm suffered. Although the arbitrator here chose a different measure of damage (excessive workload resulting from understaffed shifts), the guiding principle is the same: an arbitrator has the discretion to issue a compensatory remedy in response to contractual staffing violations.

The Hospital's critique of the public arbitration awards cited by NYSNA also misses the mark. The Hospital incorrectly stated in its opening brief, that New York has "a different judicial perspective on arbitration." Pet. Br. at 22. *See* Resp. Br. at 19 n.9 (citing cases, unaddressed by the Hospital, refuting this point). The Hospital also contends that the damages in these cases better correspond to the employees' losses. Not so. Taylor directly tied his compensatory award to the nurses' actual harm, reasonably estimating the number of understaffed shifts worked by each nurse in violation of the CBA and awarding an equivalent number of vacation days. Resp. Br. at 12-13. The Court should not disturb Taylor's reasonable measure of damages. *See Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536-7 (2d Cir. 2016); *ReliaStar Life Ins. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009).

## II.  Arbitrator Taylor Did Not Exceed His Authority

NYSNA has explained that the CBA's broad arbitration clause vested Taylor with similarly broad discretion in fashioning remedies. Resp. Br. at 19-21. Accordingly, Taylor did not exceed his authority when he awarded a compensatory remedy after he determined the Hospital violated the CBA's staffing requirements. *Id.*

The Hospital acknowledges the CBA's "broad" arbitration clause but repeats its argument that the Award violates the plain language of Section 14.07. Pet. Opp. Br. at 14. This argument fails because it: (a) ignores governing precedent, which looks for express limitations on an arbitrator's remedial authority; (b) impermissibly challenges Taylor's determination that, based on the CBA and the parties' past practice and bargaining history, he was authorized to issue the Award; and (c) is foreclosed by Second Circuit caselaw, which has found identical contract language to require merely that an arbitrator's decision "draw its essence" from the agreement. Resp. Br. at 22.

The Hospital's reliance on *Leed Architectural Products Inc. v. United Steelworkers, Local 6674* is similarly misplaced. Pet. Opp. Br. at 6, 12. There, an arbitrator exceeded his remedial authority by awarding employees an hourly wage that was higher than the explicit rates set forth in the parties' agreement. 916 F.2d 63, 64, 66-67 (2d Cir. 1990). Unlike those employees, however, who "suffered no monetary loss" because of the employer's contract violations, *id.* at 66, the nurses here suffered a cognizable harm due to the Hospital's misconduct. Taylor thus did not order an actual increase in the nurses' wages as was done in *Leed Architectural*. Instead, he ordered the Hospital to make nurses whole for the harm they experienced as a result of the Hospital's violation of its staffing obligations, and nothing in the CBA, including the vacation provisions, expressly forbids him from doing so.

9

Next, the Hospital misreads the import of NYSNA's accurate assertion that the Award provides "a discrete, one-time compensatory remedy." Pet. Opp. Br. at 13; Resp. Br. at 21. NYSNA did not question, or even address, the potential precedential value of the Award. NYSNA simply noted that the Award does not require the Hospital to provide an additional three days of vacation to nurses for years to come (a change that would arguably "amend" the nurses' annual vacation entitlement in violation of Section 14.07) but rather requires the provision of three additional vacation days on a one-time basis to compensate nurses for the harm resulting from the Hospital's staffing violations.

Finally, the fact that the arbitrator in *NYPH I* opted for a different remedy than the one chosen by Taylor renders no less instructive her findings concerning the CBA's broad grant of remedial authority to address staffing violations. Resp. Br. at 22 (citing *NYPH I*, 2024 WL 5107586, at *6). That two arbitrators may fashion different remedies to address a similar breach is simply the logical outgrowth of the broad discretion afforded arbitrators in choosing remedies. *See Enter. Wheel*, 363 U.S. at 597 ("When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations."). An award should not be vacated simply because another fact finder may have chosen a different remedy. *Nat'l Football League Mgmt. Council*, 820 F.3d at 536 (courts do not review whether the "punishment imposed was the most appropriate").

### III. The Award Is Not Irrational

NYSNA explained in its opening memorandum why the Hospital's remaining arguments lack merit. To the extent that the Hospital claims that the Award is "irrational," Pet. Br. at 29, the Court can disregard that argument because "irrationality" is not a recognized

10

ground to deny confirmation of an arbitration award. Resp. Br. at 23.[2] The Hospital seeks to avoid this outcome by reframing its claim to say that the Award does not "draw its essence" from the parties' agreement. Pet. Opp. Br. at 15. Even under that framing, however, the Hospital's claims fail on the merits and the Hospital's arguments in its opposition papers do not counsel otherwise.[3]

*First*, the Hospital again ignores the compensatory purpose of Taylor's remedy, focusing instead on the secondary issue of possible impact on patient care. Regardless, as NYSNA explained previously, Resp. Br. at 24, the wellbeing of nurses who provide patient care is directly tied to the quality of patient care. If nurses are overworked, patient care suffers. A remedy that provides some respite to nurses impacted by excessive workloads will improve, not harm, patient care.

*Second*, the Hospital falsely claims that the Award does not draw its essence from the CBA simply because Taylor's chosen remedy was not the one NYSNA requested. In fact, "there is no . . . per se rule that it is beyond the authority of the arbitrators to issue a remedy directed to an issue squarely before them unless it was requested by one of the parties." *Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council*, 729 F. App'x 33 (2d Cir. 2018) (summary order) (quoting *Harper Ins. Ltd. v. Century Indem. Co.*, 819 F. Supp. 2d 270, 277-78 (S.D.N.Y. 2011). The parties here indisputably agreed to have Taylor determine an appropriate remedy if he found a violation. That is what he did.

---

[2] The Hospital's attempt to discount Second Circuit precedent to the extent it arises under the FAA fails for the reasons outlined in Section I.A above. *See supra* at 3.

[3] The Hospital drops its faulty argument concerning the difficulty of measuring the "degree" of "overwork." *See* Pet. Br. at 29-30; Resp. Br. at 24.

11

## **CONCLUSION**

For the foregoing reasons, the Award should be confirmed.

Dated: March 13, 2025
      New York, New York

                                        */s/ Olivia R. Singer*
                                        Olivia R. Singer
                                        Megan Stater Shaw
                                        COHEN, WEISS and SIMON LLP
                                        909 Third Avenue, 12th Floor
                                        New York, NY 10022
                                        (212) 356-0206
                                        osinger@cwsny.com

## **WORD COUNT CERTIFICATION**

Pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, the undersigned, an attorney admitted to practice in this Court, hereby certifies that, excluding the parts of the document exempted by Rule 7.1(c), this document contains 3,397 words and therefore complies with the Rule's word-count limitation.

Dated: March 13, 2025
       New York, New York

                                                          */s/ Olivia R. Singer*